## Kifus Unemployment Compensation Case.

Argued November 15, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

 ██

*Ewing K. Newcomer,* and *Newcomer & Mahoney,* for appellant, submitted a brief.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY ERVIN, J., December 14, 1960:

The only issue in this unemployment compensation appeal is whether claimant had good cause for refusing the job offered to her by the bureau.

A claimant who seeks benefits must at all times be ready and willing to accept suitable employment, and must have substantial and reasonable grounds for refusing offered work: *Pompa Unemployment Compensation Case,* 179 Pa. Superior Ct. 443, 445, 115 A. 2d 772. Claimant had a valid separation from her last employer, Sigwalt's Grocery Store, on October 30, 1959, where she had been employed as a sales clerk at a weekly wage of $30.00.

On January 7, 1960 she was offered a referral to a possible job opportunity at Bryan Sewing Machine Company, as a sewing machine operator, at $1.00 per hour. She had a prior work history and experience as a sewing machine operator and was coded as such on the bureau's records.

She refused to accept the referral because she had heard a rumor that her former employer, Sigwalt's Grocery Store, might go back into business. She did not, however, have a definite date of recall at the time she refused the referral. The bureau, the referee and the board all concluded that claimant did not have

"good cause" for refusing the offer of work and, therefore, disqualified her from receiving benefits under the provisions of §402(a) of the Unemployment Compensation Law, 43 PS §802(a).

In the "Summary of Interview" she said: "I still have keys to Sigwalt Store and Mr. Sigwalt told my husband he may reopen soon. The reason for my statement is I intend to be called back to work at store soon—that's why I told Mrs. McDowell [Employment Interviewer] what I did."

At the subsequent referee's hearing Elsie J. Mac-Dowell, employment interviewer, testified as follows: "It was to the Bryan Sewing Machine Company of Filbert as a sewing machine operator. Mrs. Kifus had had experience for two years with the Gateway Manufacturing Company as sewing machine operator and was coded for that type of work in the office, in addition to sales clerk work. We had an order for Bryan Sewing Machine Company and I called her January 7 and she stated she was not interested in that employment. I believe to quote her that she had heard that her old employer, Mr. Sigwalt, was going to reopen his store. If he did, she wanted to go back there. She had not talked to Mr. Sigwalt, but she had heard the rumor and was waiting. She was going to talk to him, but she was not available for other work until after she had talked to him to see what his plans were for reopening his store."

At the referee's hearing the claimant testified as follows: "Q. You have heard the testimony of the Bureau representative. Are those the facts? A. Yes. Q. You were laid off October 30, were you? A. That's right. Q. And at that time were you told when you might expect to be recalled? A. No. Q. And on January 7 had you been given any definite date of recall? A. No, I hadn't. Q. But you had hoped and thought Mr. Sigwalt might recall you and, therefore, you were

not interested in considering any other employment, is that right? A. Not altogether. I didn't want to take the sewing job because of my eyes. Q. What about your eyes, ma'am? A. I don't think I could take that kind of work. Q. Are you saying your eyes are not good? A. That's right. Q. When was it you last worked in a sewing factory? A. I think the latter part of fifty-three. I am not quite sure. Q. Since that time you have had any special trouble with your eyes? A. Well, I have had a change this last year and they had to be made stronger this past year. Q. That isn't the reason though you told Mrs. MacDowell you wouldn't accept the job? A. Not at the time. Q. Any reason why you did not tell her that? A. No."

At the remand hearing before the referee, the appellant called her optometrist, Dr. William W. Marsteller, to testify as to the condition of her eyes. However, although this witness testified that the appellant suffered from the very common eye disorders of "farsightedness" and "astigmatism," nevertheless the lens that he prescribed for her glasses corrected her vision to 20/20 and that "she has practically normal vision with her glasses on. . . ."

The board determined that the real reason for claimant's refusal of the job referral was her desire to return to work as a sales clerk at Sigwalt's store. The complaint as to her eyes was clearly an afterthought and was not the real reason for the job refusal.

It is the function of the board to pass upon the credibility of the witnesses and to draw reasonable inferences from the testimony: *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 403, 116 A. 2d 271.

The facts and reasonable inferences as found by the board, if supported by competent testimony, are

binding upon us: *Davis Unemployment Compensation Case,* 187 Pa. Superior Ct. 116, 144 A. 2d 452.

Decision affirmed.